**In the United States District Court
for the
Western District of Texas**

**DENYS LOPEZ MORENO**   §
                        §
**v.**                  §
                        §   SA-11-CV-746-XR
**NORTHSIDE I.S.D., ET AL.**   §

**ORDER**

On this day came on to be considered Defendants' motion for summary judgment (docket no. 77), Plaintiff's amended motion to strike the supplemental report of Craig Miller (docket no. 78), Plaintiff's motion to exclude testimony of Craig Miller (docket no. 79), Defendants' motion to exclude expert (docket no. 80), and Plaintiff's opposed motion for leave to file a motion to strike Defendants' third supplemental Rule 26 disclosures and to exclude the testimony of Kelley Fryar, Richard Bryan and Diana Hendricks (docket no. 97).

**I.   Background**

Plaintiff[1] initiated this lawsuit by filing an Original Complaint on September 8, 2011, against Defendants Northside Independent School District ("NISD"), John W. Page, and Daniel K. Alvarado. The First Amended Complaint (docket no. 10) is the live pleading.

The Amended Complaint alleges as follows: On November 12, 2010, Derek was a fourteen-year old student in NISD when he was shot and killed by Alvarado, a uniformed NISD police officer. Derek and another fourteen-year old boy exited a NISD school bus, crossed the street, and began fighting. Derek punched or hit the other boy. Alvarado, having responded to a call regarding a bus with a flat tire, witnessed Derek strike the other boy and ordered Derek to

---

[1] Ruben Sanchez, Derek R. Lopez's biological father, has joined this lawsuit as an Intervenor. He raises the same allegations as Denys Lopez Moreno. See Docket no. 30. All references in this Order to Plaintiff include Intervenor.

"freeze." Instead, Derek ran, and Alvarado gave chase in his patrol car, eventually losing sight of Derek and returning to the location of the fight. Ignoring his supervisor's directive to stay with the victim and "not do any big search," Alvarado placed the second boy into the patrol car and drove into the neighborhood to search for Derek. Derek was hiding in a shed in the back yard of a residence. The homeowner witnessed Derek enter the fenced yard and hide in the shed, and called 911. The 911 operator informed her that SAPD had been dispatched, and the homeowner went to the front of her home to wait for SAPD.

As she was waiting, the homeowner saw a neighbor walking across the street, opened a window, and told him what happened. The neighbor saw Alvarado in his patrol car, flagged him down, and pointed towards the home. Alvarado went to the home, where he was met by the homeowner, who told him that Derek was in the shed. Although Derek posed no threat, and in violation of NISD police department procedures, Alvarado immediately drew his weapon and entered the back yard, where he shot and killed Derek.[2]

Plaintiff asserts the following causes of action: (1) a section 1983 claim for excessive force (violation of the Fourth Amendment) against Alvarado, individually; (2) a section 1983 claim against NISD based on failure to train; (3) a section 1983 claim (failure to train) against NISD Police Chief Page (supervisory liability); (4) common-law negligence (failure to train) against Page; and (5) common-law negligence against Alvarado.

## II.   Summary Judgment Standard

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law". Fed. R. Civ. P. 56(a). A dispute is "genuine" if "the evidence supporting its resolution in favor of the party opposing summary

---

[2] Derek Lopez died as a result of a gunshot wound to the right chest, which injured the liver, pancreas, colon, left kidney, aorta and inferior vena cava, resulting in bleeding into the abdominal cavity and retro peritoneum. According to the autopsy report, there "is no evidence of close range firing of the wound."

judgment ... would be sufficient to support a verdict in favor of that party". *St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987). A dispute is not genuine if "the evidence offered by both the moving and opposing parties would support only one conclusion," even if all the nonmovant's evidence was fully credited. *Id*.

A fact is "material" if it "might affect the outcome of the suit under the governing law"; it is not material, and therefore does not affect the summary judgment analysis, if it is "irrelevant or unnecessary". *Id*. (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

A qualified-immunity defense alters the summary-judgment burden: "[o]nce a defendant invokes qualified immunity, the burden shifts to the plaintiff to show that the defense is not available." *Kovacic v. Villareal*, 628 F.3d 209, 211 (5th Cir. 2010).

### III. Defendants' motion for summary judgment[3]

#### A. Alvarado's claim that as a matter of law his use of deadly force was not excessive or objectively unreasonable under the circumstances

An officer has the right to use deadly force if that officer harbored an objective and reasonable belief that a suspect presented an "immediate threat to [his] safety." *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009); *see also Ontiveros v. City of Rosenberg*, 564 F.3d 379 (5th Cir. 2009); *Young v. City of Killeen*, 775 F.2d 1349 (5th Cir. 1985).

Alvarado argues that he had been pursuing a fleeing, noncompliant assault suspect. He also argues that there may have been items in the shed that could have been potentially used as a weapon. Alvarado argues that under the circumstances he was justified in having his revolver drawn as he approached the shed. He argues that as he opened the shed, Derek "bull-rushed" the door, causing the door to hit Alvarado's face, causing a cut lip. Alvarado then argues that he perceived that Derek was charging at him for his weapon.

---

[3] Plaintiff objects to portions of various affidavits filed by Defendants (see docket no. 85). The Court did not rely upon any of those objected to portions in deciding the motion for summary judgment.

3

The reasonableness of an officer's force is evaluated "in light of the facts and circumstances confronting [him]." *Graham v. Connor*, 490 U.S. 386, 397 (1989) (internal quotation marks and citation omitted).

In this case Alvarado testified that he saw an individual (later identified as Derek) strike another (later identified as Chris Avilez) about three times at a bus stop.[4] He testified that he thought a misdemeanor assault had taken place. He placed the victim in his patrol car. A fact issue exists as to whether Alvarado was able to determine Derek's age and the age of the victim, while that person was in his patrol car.[5] When Alvarado arrived at the house where the shed was located, Alvarado testified that Derek posed no threat to the homeowner;[6] that if he thought Derek was violent it would have been prudent for him to wait for backup;[7] that at the moment he unholstered his weapon Derek posed no threat to him;[8] and he drew his weapon because he thought that Derek could pose a threat by using some object in the shed as a weapon.[9] Alvarado testified that at no time did he see Derek with any gun or knife.[10] Alvarado further testified that after the shed door hit his face, he "felt that [Derek] was coming after me, so I – I took the shot."[11] Alvarado never saw Derek grab for any weapon.[12]

An officer cannot use deadly force without an immediate serious threat to himself or others. Here, genuine issues of material fact exist as to whether there was such an immediate threat. *See Reyes v. Bridgwater*, 362 Fed. Appx. 403 (5th Cir. 2010); *Giardina v. Lawrence*, 354

---

[4] Alvarado Depo. at p.214.
[5] A witness (Erika Salazar) testified that she knew the boys involved in the fight were kids from the alternative school and that they were wearing school uniforms. Depo. of Erika Salazar at pp. 16-17.
[6] Alvarado Depo. at p. 212.
[7] *Id*. at 214.
[8] *Id*. at 217.
[9] *Id*. at 219.
[10] *Id*. at 184.
[11] *Id*. at 238-239.
[12] *Id*. at 244.

4

Fed. Appx. 914 (5th Cir. 2009); *Lytle v. Bexar County, Tex.*, 560 F.3d 404 (5th Cir. 2009). Defendant Alvarado's motion for summary judgment on this issue is denied.

### B. NISD and Page's claim that they were not deliberately indifferent in failing to train Alvarado on the use of force/weapons

To establish individual liability upon Page (a supervisor) for failure to train, a plaintiff must show that "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Estate of Davis v. City of N. Richland Hills*, 406 F.3d 375, 381-82 (5th Cir. 2005).

To succeed on her failure-to-train claim against NISD, Plaintiff must show that (1) any training procedures were inadequate; (2) NISD was deliberately indifferent in adopting its training policy; and (3) the inadequate training policy directly caused Derek's injury. *See Conner v. Travis Co.*, 209 F.3d 794, 796 (5th Cir. 2000).

"Deliberate indifference is more than mere negligence." *Id.* The plaintiff must show that "in light of the duties assigned to specific officers or employees, the need for more or different training is obvious, and the inadequacy so likely to result in violations of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton v. Harris*, 489 U.S. 378, 390 (1989). A showing of deliberate indifference is difficult, although not impossible, to base on a single incident. *Gabriel v. City of Plano*, 202 F.3d 741, 745 (5th Cir. 2000); *Conner*, 209 F.3d at 797. Claims of inadequate training generally require a showing that prior acts are "fairly similar to what ultimately transpired and, in the case of excessive use of force, that the prior act must have involved injury to a third party." *Davis*, 406 F.3d at 383 n. 34. The "single incident exception" is narrow. A plaintiff invoking it "must prove that the highly predictable consequence of a failure to train

would result in the specific injury suffered, and that the failure to train represented the moving force behind the constitutional violation." *Id*. at 386.

The Fifth Circuit has held that "when officers have received training required by Texas law, the plaintiff must show that the legal minimum of training was inadequate." *Sanders–Burns v, City of El Paso*, 594 F.3d 366, 381-82 (5th Cir. 2010).  In this case, Alvarado completed the initial state-mandated TCLEOSE training for police officers at the police academy.  He also received an intermediate peace officer certification in 1997, an advanced peace officer certificate in 2001 and a master peace officer certificate in 2008.  He completed numerous law enforcement classes throughout the years.[13]  One 60 hour course was titled Use of Force (Intermediate) and Alvarado completed this course in 1994.

Plaintiff argues that this training was inadequate because NISD did not require annual or quarterly use of force training and that there was no use of force training requirements beyond the state mandates.  It is undisputed that NISD promulgated a use of force policy.  Plaintiff argues that the policy was too vague.

In support of Plaintiff's argument, Plaintiff proffers the expert witness testimony of Thomas J. Aveni.[14]  Mr. Aveni is a certified police officer and has been a certified police trainer since 1983.  Mr. Aveni presents opinions highly critical of Alvarado's actions.  With regard to the failure to train issue, Mr. Aveni opines that "Alvarado had not been trained for the patrol duties that he undertook after witnessing the simple assault in question."  "Alvarado's errors in judgment are consistent with inadequate training." "Given the totality of Officer Alvarado's operational errors, his decision to employ deadly force seems to be attributable to his grossly deficient training for the series of tasks that he elected to undertake." "It is … predictable that if

---

[13] It appears from the title of many of these courses, that use of force issues would have been covered.  Defendants fail, however, to state whether use of force was covered in these classes.
[14] Docket no. 89-8.

[patrol officers] are not periodically trained and instructed … they will make mistakes."  In addition, Mr. Aveni opines that NISD's use of force policy should have been reviewed "for compliance with federal law on a yearly basis" and that NISD officers should be trained on the policy on a quarterly basis.  He further opines that it "is abundantly clear that the minimal use of force training requirements promulgated by the Texas Commission on Law Enforcement Officer Standards and Education (TCLEOSE) are grossly inadequate."  Finally, Mr. Aveni states that the "utter failure of Defendants NISD and Page to train officers on even the most basic duties of a patrolman … was a direct cause of this tragedy."

"Failure to train" claims are most commonly premised on a pattern of incidents in which citizens were injured and which show that failure to train was an official policy of the municipality. *Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998); *Valle v. City of Houston*, 613 F.3d 536, 547 (5th Cir. 2010), *cert. denied*, 131 S.Ct. 1094 (2011).  This theory is not applicable to this case.

In this "single incident" case, the plaintiff "must prove that the highly predictable consequence of the failure to train would result in the specific injury suffered, and that the failure to train represented the moving force behind the violation." *Sanders–Burns v. City of Plano*, 594 F.3d at 381.

A plaintiff must show more than that the incident could have been avoided with more or better training. *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005).  In identifying the inadequacy, "the focus must be on the adequacy of the training program in relation to the tasks the particular officers must perform," and the identified deficiency in a city's training program must be closely related to the ultimate injury. *City of Canton*, 489 U.S. at 390–91; *Goodman v. Harris County*, 571 F.3d 388, 395 (5th Cir. 2009), *cert. denied*, 558 U.S. 1148

(2010). One officer's unsatisfactory training will not establish municipal liability, because that individual's shortcomings or mistakes may have been caused by factors other than a deficient training program. *City of Canton*, 489 U.S. at 390–91. Evidence that a municipality's training program complied with state law is also a factor that weighs against a finding of failure to train. *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 169 (5th Cir. 2010), *cert. denied*, ––– U.S. –––, 131 S.Ct. 3059, 180 L.Ed.2d 887 (2011) (*citing Conner v. Travis Cnty.*, 209 F.3d 794, 798 (5th Cir. 2000)).

Mr. Aveni is simply incorrect when he opines that Alvarado "had not been trained for the patrol duties that he undertook after witnessing the simple assault in question." A review of Alvarado's TCLEOSE education history reflects that Alvarado completed courses such as Legal Standards for Law Enforcement Officers, Traffic Stops, Crisis Intervention, Patrol/Tactical, Arrest, and Search and Seizure. The Court assumes that Mr. Aveni is stating that NISD did not independently provide Alvarado additional training beyond that acquired by Alvarado to maintain his peace officer certification. This assertion, however, is insufficient to defeat summary judgment. *Roberts v. City of Shreveport*, 397 F.3d at 293-94.

In the alternative, even if Plaintiff has established a fact issue as to whether training procedures were inadequate, Plaintiff fails to present competent summary judgment evidence that NISD or Page were deliberately indifferent in failing to provide any additional training to Alvarado *prior* to this tragic incident.[15]

Defendants' motion for summary judgment on this issue is granted.[16]

---

[15] Plaintiff is critical of NISD for failing to alter its policy or training after this tragedy occurred. This post-incident failure to alter training or the use of force policy may be of consequence to any potential future incident.

[16] Because the Court dismisses the section 1983 claims against NISD, the Court does not address the District's argument that punitive damages are not recoverable against it as a matter of law.

### C. Claim of qualified immunity

Alvarado and Page assert they are entitled to qualified immunity with regard to Plaintiff's section 1983 claim.

Alvarado is entitled to qualified immunity on Plaintiff's section 1983 excessive force claim unless (1) Plaintiff has "adduced sufficient evidence to raise a genuine issue of material fact suggesting [that Alvarado's] conduct violated an actual constitutional right[,]" and (2) the officer's "actions were objectively unreasonable in light of clearly established law at the time of the conduct in question." *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008). Objective reasonableness is a matter of law for the court to decide. *Goodson v. City of Corpus Christi*, 202 F.3d 730, 736 (5th Cir. 2000).

As stated above, Plaintiff has adduced sufficient evidence to raise a genuine issue of material fact suggesting that Alvarado's conduct violated an actual constitutional right. The Court next turns to whether, considering the totality of the circumstances, Alvarado's conduct may not have been objectively reasonable. The Court concludes that a rational jury could conclude that Derek did not pose an especially significant threat of harm such that the use of deadly force was justified. Further, when weighing the threat of harm posed by Derek against Alvarado's chosen course of conduct, the jury could conclude that Alvarado's conduct was not a reasonable response to any threat. Accordingly, Alvarado's entitlement to qualified immunity turns on genuine issues of material fact that the factfinder must resolve. *Lytle*, 560 F.3d at 416-17.

As stated above, the Court has concluded that Plaintiff has failed to present competent summary judgment evidence that Page was deliberately indifferent in failing to provide any additional training to Alvarado. In the alternative, and for the same reasons, the Court finds that

Page is entitled to qualified immunity as to the section 1983 claim. *Reyes v. Bridgwater*, 362 Fed. Appx. 403 (5th Cir. 2010).

### D.  Statutory Immunity Claim

Page and Alvarado argue that the state law negligence claims are barred by Tex. Educ. Code § 22.0511(a).  This section states:  "A professional employee of a school district is not personally liable for any act that is incident to or within the scope of the duties of the employee's position of employment and that involves the exercise of judgment or discretion on the part of the employee, except in circumstances in which a professional employee uses excessive force in the discipline of students or negligence resulting in bodily injury to students."  It is uncontested that Page and Alvarado are "professional employees" as defined in the statute.

The "elements that a defendant must establish are:  1. The defendant was a professional employee of a school district; 2. The defendant's challenged conduct was within or incident to the scope of his duties; 3. The defendant's duties involved the exercise of discretion or judgment; and 4. The defendant's acts did not cause the plaintiff injury as a result of the use of excessive force in disciplining the plaintiff or negligence in disciplining the plaintiff."  *Doe v. S & S Consol. I.S.D.*, 149 F.Supp.2d 274, 297 (E.D. Tex. 2001).

With regard to Alvarado, as stated above, a genuine issue of material fact exists as to whether he used excessive force.  Accordingly, the statutory immunity is not applicable to the negligence claim asserted against him.

With regard to Page, Plaintiff does not specifically respond to Page's claim of statutory immunity.  The Court concludes that Tex. Educ. Code § 22.0511(a) bars the negligence claim asserted against Page.  Page is a professional employee of the school district.  The defendant's challenged conduct was within or incident to the scope of his duties.  The defendant's duties

involved the exercise of discretion or judgment. Page did not cause Derek's injury as a result of the use of excessive force and Page did not discipline Derek. Summary judgment in favor of Page is granted on this issue.

### E. Negligence Claim Generally

Defendants argue that Plaintiff has failed to establish all the elements of a negligence claim.

With regard to Page, as stated above Plaintiff's negligence claim is barred by statutory immunity. Accordingly, the Court does not address whether Plaintiff has established all the elements of a negligence claim against him.

With regard to Alvarado, Plaintiff alleges that Alvarado was negligent in unholstering his firearm and discharging his firearm, when there was no imminent danger present. Plaintiff further argues that Alvarado was negligent in failing to request that a City of San Antonio police officer be dispatched. Finally, Plaintiff alleges that Alvarado was negligent in failing to take only the action necessary to contain the situation until a City of San Antonio Police Officer responded to the scene.[17]

The elements of a negligence action in Texas are: 1) legal duty owed by one person to another; 2) a breach of that duty; and 3) damages proximately caused by the breach. *D. Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex. 2002). Pursuant to Tex. Penal Code § 9.51(c), a peace officer is justified in using deadly force against another under certain conditions. Conversely, a peace officer has a duty not to use deadly force where the suspect poses no immediate threat to

---

[17] Defendant characterizes the negligence claim as follows: Alvarado was negligent in failing to follow the District's police department manual. Defendant argues that there existed no legal duty that Alvarado owed to Derek to follow the District's internal procedures. The Court construes the allegation as stating that the NISD police department promulgated various policies and that Alvarado was negligent in failing to adhere to those policies. Alternatively, Alvarado argues that if he owed any legal duty to Derek, he complied with the policy by attempting to contain the situation and exercised discretion.

the officer and no threat to others, and the harm resulting from failing to apprehend does not justify the use of deadly force to do so. *Tennessee v. Garner*, 471 U.S. 1 (1985). As stated above, genuine issues of material fact exist as to whether Alvarado breached that duty and accordingly summary judgment on this issue is denied.

### IV. Plaintiff's amended motion to strike the supplemental report of Craig Miller (docket no. 78)

On October 22, 2012, Defendants timely designated Craig Miller as an expert witness in this case. Plaintiff deposed Mr. Miller on February 12, 2013. On March 25, 2013, Defendants provided Plaintiff a supplemental report. Plaintiff argues that the report is not "supplemental", but rather contains three new opinions (Alvarado's use of force was reasonable, Alvarado was a properly trained in the use of force, and Alvarado was a properly trained police officer). Alternatively, Plaintiff argues that Miller's opinions are merely conclusory.

The Court has reviewed the original report submitted by Miller dated October 19, 2012. The Court has also reviewed the supplemental report dated March 1, 2013. The Court agrees that the report is supplemental and does not contain any new opinions. The later report supplements opinions previously expressed. The parties disagree as to whether the supplemental report was timely provided to Plaintiff's counsel. The Court grants Defendant's alternative request that leave to file the supplement be granted. Plaintiff's motion to strike the supplemental report is denied. The Court reserves ruling on any objections (conclusory or other objections) to Mr. Miller's testimony until trial. The Court notes that pursuant to Fed. R. Evid. 702, it will not allow any expert witness to testify as to any opinions that lack any evidentiary basis. *See Matosky v. Manning*, 428 Fed. Appx. 293 (5th Cir. 2011).

### V.     Plaintiff's Motion to Exclude Craig Miller[18] (docket no. 79)

In this *Daubert* motion, Plaintiff seeks to have Miller stricken as an expert because he made no effort to apply any independent analysis to the issues in this case, relied solely upon materials provided to him by defense counsel, and merely accepted statements included with San Antonio Police Department documents verbatim. The Court rejects these as a basis to disqualify Miller. These areas may be explored by Plaintiff in any cross examination. Nevertheless, as a result of certain rulings above and because some of Miller's opinions are not relevant, the Court will prohibit Miller from testifying on the following challenged subjects: that NISD met the bare minimum requirements for use of force training, that the neighborhood in question was a high crime area, that Derek was a drug user, that Alvarado could assume Derek had access to weapons in the shed, and that Alvarado's decision to shoot did not result from deficient training. Plaintiff's motion to strike is granted in part and denied in part.[19]

### VI.     Defendants' motion to exclude expert (docket no. 80)

In this *Daubert* motion, Defendant seeks to exclude Mr. Aveni as an expert witness. This motion appears to have been filed in response to Plaintiff's motion to strike Miller. Again, because of the rulings made by the Court dismissing NISD, many of the issues in which the expert rendered an opinion are no longer relevant. The Court will be limiting each of the expert's testimony to testifying regarding nationally recognized police standards governing the use of excessive force, as well as the specific departmental excessive force guidelines to

---

[18] Mr. Miller has 30 years of experience as a police officer, police supervisor and Commander of the Dallas Police Department Special Investigations Unit. He is qualified to render an expert opinion on certain issues. *See King v. Taylor*, --- F.Supp.2d ----, 2013 WL 1914512 (E.D. Ky. 2013) (admissibility of expert testimony regarding police procedures have found such testimony to be admissible, so long as the expert refrains from expressing legal conclusions).

[19] As stated above, and acknowledged by Defendant in his response (docket no. 82), pursuant to Fed. R. Evid. 702, the Court will not allow any expert witness to testify as to any opinions that lack any evidentiary basis. Defendant concedes that Chief Miller will not testify as to any legal conclusions.

which the officer was subject.  The Court will not allow either of the expert witnesses to render a legal conclusion as to whether the officer's conduct was unreasonable under those guidelines.  *See King v. Taylor*, --- F.Supp.2d ----, 2013 WL 1914512 (E.D. Ky. 2013).  Although this Court will recognize Aveni as an expert in "use of force" issues, based upon his experience and education, the Court does not recognize Mr. Aveni as a ballistics expert.  Defendants' motion to exclude expert Aveni is granted in part and denied in part.

### VII.     Plaintiff's motion to Strike Defendant's third supplemental Rule 26 Disclosures (docket no. 97)

In this motion Plaintiff seeks to strike Defendants' third supplemental Rule 26 disclosures, which identify three new witnesses (Kelley Fryar, Richard Bryan and Diana Hendricks).  According to the third supplemental disclosure, these three witnesses may have knowledge of the use of force training received by Alvarado.  Given the rulings made above, the testimony of these witnesses is no longer relevant.  The motion to strike is granted.

### Conclusion

Defendants' motion for summary judgment (docket no. 77) is granted in part and denied in part.  All claims against NISD and Page are dismissed.

Plaintiff's amended motion to strike the supplemental report of Craig Miller (docket no. 78) is denied.

Plaintiff's motion to exclude testimony of Craig Miller (docket no. 79) is granted in part and denied in part.

Defendants' motion to exclude expert (docket no. 80) is granted in part and denied in part.

Plaintiff's motion to strike Defendants' third supplemental Rule 26 disclosures and to exclude the testimony of Kelley Fryar, Richard Bryan and Diana Hendricks (docket no. 97) is granted.

SIGNED this 12th day of July, 2013.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE